629 So.2d 1209 (1993)
STATE of Louisiana
v.
W.A.S.[1]
No. CA 92 1899.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
Rehearing Denied December 6, 1993.
Elizabeth Murry, Office of the Dist. Atty., Livingston, for plaintiff.
*1210 Marvin Montgomery, Baton Rouge, for defendant.
Before CARTER, GONZALES and WHIPPLE, JJ.
GONZALES, Judge.
Petition was filed January 11, 1991 by the State of Louisiana seeking to establish the defendant, W.A.S., as the natural father of the minor child, L.B., who was born June 15, 1979 to S.D.L. The court ordered blood testing for the mother, child and putative father, which was completed. Following trial in the matter, judgment was rendered by the court decreeing W.A.S. to be the natural father of the minor child, L.B., and subsequently, judgment was rendered ordering W.A.S. to pay child support. From the judgment establishing paternity, W.A.S. appeals and makes the following assignments of error:
A. The trial court erred in failing to declare the blood test unconstitutional under the Fourth Amendment to the United States Constitution and in failing to hold a show cause hearing to determine whether there was sufficient evidence to warrant court ordered blood testing.
B. The trial court erred in admitting the blood test results and subsequent affidavit into evidence where Plaintiff never offered them into evidence.
C. The trial court erred and abused its discretion in ruling after Plaintiff had rested its case-in-chief and [W.A.S.] had rested his case, that it had allowed Plaintiff to leave its case-in-chief open, when there is no indication in the record that such leave was requested by Plaintiff or ordered by the court.
D. The trial court erred in placing into evidence the blood test results and subsequent affidavit after the Plaintiff and [W.A.S.] had both rested their cases-in-chief.
E. The trial court erred in ruling that the blood test results were admissible into evidence where the chain of custody had not been proven as required by law.
F. The trial court erred in ruling that plaintiff proved by a preponderance of the evidence that [W.A.S.] is the biological father of the child.
Appellant first contests the constitutionality of La.R.S. 9:396[2], the statute authorizing blood tests in paternity cases, which reads as follows:
A. Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child, and alleged father to submit to the drawing of blood samples, and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.
B. (1) The district attorney, in assisting the Department of Social Services in establishing paternity as authorized by R.S. 46:236.1, may file a motion with a court of proper jurisdiction and venue prior to and without the necessity of filing any other legal proceeding. Upon ex parte motion of the district attorney and sworn affidavit of the party alleging specific facts tending to prove paternity and other facts necessary to establish the jurisdiction and venue of the court, the court shall issue an ex parte order directing the mother, child, and alleged father to appear at a certain date and time to submit to the drawing of blood samples and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures. The order shall be personally served upon the alleged father. If any *1211 party refuses to submit to such tests, the court, in a subsequent civil action in which paternity is a relevant fact, may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.
(2) If the written report of the results of the initial testing absolves a party from the allegation of paternity, the district attorney and the department shall be enjoined from initiating any subsequent civil action against that party to establish paternity of the same child. If the written report fails to absolve a party from the allegation of paternity, such report may be used by the district attorney or the department as evidence against the alleged father in any subsequent civil action for the establishment of paternity or by the alleged father in any subsequent proceeding in which filiation is an issue.
The constitutionality of La.R.S. 9:396 was addressed by the supreme court in In the Interest of J.M., 590 So.2d 565 (La.1991). In that case, the mother of the minor child ("Ms. B.") filed a paternity action against both her former husband, to whom she was married but separated from at the time of the child's conception, and, "Mr. Z.", with whom she had allegedly had an exclusive sexual relationship near the time of conception. During the course of the lawsuit, Ms. B. requested that the court order blood testing of the defendants. In response, Mr. Z. filed a Motion for Declaratory Judgment regarding the constitutionality of the statute, resulting in a ruling by the trial court declaring La.R.S. 9:396 unconstitutional. The supreme court in reversing that ruling of the trial court held as follows:
A court order for blood testing to determine paternity is ... a search and seizure within the meaning of the Fourth Amendment.... [T]he question at issue ... is whether a court-ordered blood test is reasonable and justified under the circumstances.
A blood test is minimally intrusive, relatively painless, and medically safe. In facilitating a determination of paternity, blood tests are highly reliable and unequaled in evidentiary value.
. . . .
Although the alleged father has a right to privacy and to be free from unreasonable searches and seizures, those rights are not absolute and may be reasonably regulated when the State has a sufficiently weighty interest.... [T]he State has a compelling interest because of its pervasive concern for the welfare of its children.... In addition, in a paternity case involving a minor child on public assistance, the State has an important interest in conservation of the State's public assistance funds.... Finally, a minor child has a right to support from his parents.
Although a paternity action is civil, not criminal, the constitutional prohibition against unreasonable searches and seizures is still applicable, and a proper showing of sufficient justification under the particular factual circumstances of the case must be made before a court may order a compulsory blood test.... [A]s a preliminary matter, before the court may issue an order for compulsory blood testing, the moving party must show that there is a reasonable possibility of paternity. As explained hereafter, in cases in which paternity is contested and a party to the action refuses to voluntarily undergo a blood test, a show cause hearing must be held in which the court can determine whether there is sufficient evidence to establish a prima facie case which warrants issuance of a court order for blood testing.
. . . .
We therefore require a showing, on a rule to show cause, at which the parties have an opportunity to present evidence regarding the mother's relationship with the alleged father, with rights of cross-examination and confrontation of witnesses, and in which counsel may present oral argument to the court.
. . . .
Because of the strong societal interest in the determination of parentage of minor *1212 children and the minimal intrusion involved, we find that court-ordered blood testing in paternity cases is constitutionally permissible if justified under the circumstances of the particular case. La.R.S. 9:396 is reasonably construed by this Court to require a proper showing in a show cause hearing before issuance of an order for compulsory blood testing. The statute is therefore not unconstitutional, because, so construed, it does not violate the prohibition against unreasonable searches and seizures under the Fourth Amendment of the United States Constitution or Article I, Section 5 of the 1974 Louisiana Constitution.... In The Interest of J.M., 590 So.2d at 567-568, 570, 572. [Emphasis added.]
Although it is alleged in brief to this court that W.A.S. refused to voluntarily submit to blood testing, that contention is unsupported by the record presented on appeal. Admittedly, a court order was signed in January of 1991 ordering W.A.S. to appear for blood testing, in conjunction with the filing of plaintiff's petition for paternity. However, thereafter, no motion for protective order or request for contradictory hearing was filed by W.A.S., as was done in In the Interest of J.M., supra. In fact, documents filed into the record, completed in March of 1991 at the time the blood was drawn for the testing procedure, contain the following language: "I, [W.A.S.], do hereby submit to having blood drawn for paternity determination testing." A signature purporting to be that of W.A.S. appears on this form, completed at Roche Biomedical Laboratories, in the blank space containing the designation "Putative Father's Signature." W.A.S.'s first objection to the ordered blood testing occurred in December of 1991, after the decision in In the Interest of J.M., supra, was handed down.
Under the circumstances of this case, we believe W.A.S.'s failure to raise an objection to the blood testing when it was ordered by the court amounted to a waiver of his right to object thereto and, in effect, constituted a voluntary submission to the blood test.
Notwithstanding waiver, we believe that the failure to hold a contradictory hearing in the instant case was harmless error. When error is detected in a trial court proceeding, it must be weighed to determine whether such error is harmless or prejudicial. Cormier v. Cormier, 479 So.2d 1069 (La.App. 3d Cir.1985). When a review of the entire record clearly indicates the correctness of the lower court's judgment and that justice has been done between the parties, that judgment will not be overturned because of errors of law that do not affect the merits. Johnson v. Morris, 431 So.2d 429 (La.App. 4th Cir.) (on rehearing), writ denied, 437 So.2d 1151 (La.1983); Naquin v. Maryland Casualty Company, 311 So.2d 48 (La.App. 3d Cir.), writ refused, and writ not considered, 313 So.2d 598 (La.1975); Shows v. Williamson, 256 So.2d 688 (La.App. 2d Cir.), writ refused, 261 La. 231, 259 So.2d 76 (La.1972); Johnson v. Petit, 236 So.2d 304 (La.App. 4th Cir.1970). In deciding whether an appellate court should reverse a judgment based on a trial court procedural error, the determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case. Sneed v. Satcher, 597 So.2d 1070 (La.App. 2d Cir. 1992); Neumeyer v. Terral, 478 So.2d 1281 (La.App. 5th Cir.1985), writ denied, 481 So.2d 631 (La.1986). The party alleging error has the burden of showing the error was prejudicial to his case. Neumeyer v. Terral, 478 So.2d at 1285; American Manufacturers Mutual Insurance Company v. General Motors Corporation, 582 So.2d 934 (La.App. 2d Cir.1991).
If a contradictory hearing had been held prior to the trial court ordering the defendant to undergo blood testing, at a minimum, the testimony of the minor child's mother would have been presented. S.D.L.'s testimony given at the trial of the matter reflects the following. S.D.L. testified that she and the defendant lived in the same apartment complex when they met. She and the defendant socialized in various common areas of the apartment complex, including the washateria and swimming pool. S.D.L. testified that she attended a party at defendant's request and visited him in his apartment on several occasions. And, it was during these latter visits that she and the defendant engaged *1213 in sexual relations. S.D.L. testified that she did not have a sexual relationship with anyone else during the time her son was conceived.
Such testimony would have been sufficient to establish a prima facie case for ordering blood testing. Considering this, together with defendant's failure to object contemporaneously to the testing order, we are led to conclude that the failure to hold the constitutionally mandated hearing in the instant case was harmless error. To reverse and remand for a preliminary hearing, re-testing and re-trial would be judicially inefficient.
Next, W.A.S. contends the blood test was improperly introduced into evidence because the supporting affidavit was allowed by the court to be introduced after plaintiff rested its case. The following comments made by the trial judge on the record are relevant to this issue:
THE COURT: [Plaintiff's Counsel], at the last hearing I told you I would hold your case open for the submission of the affidavit and the resubmission of the lab report.
. . . .
THE COURT: [L]et me specifically note for the record that I had advised [Plaintiff's Counsel] that I would hold her case open ... so that she would be able to present an affidavit and if she did submit the affidavit I would allow the blood tests. So she is is [sic] not presenting that in rebuttal. That is in her case in chief....
We find no reason to dispute such a clear statement by the trial court, and even if the trial court had accepted the evidence out of order, it would be within his discretion under La.C.C.P. arts. 1631 and 1632 to do so. The trial court's decision to re-open a case for additional evidence is discretionary and will not be disturbed absent a clear abuse of discretion. Malbrough v. Wallace, 594 So.2d 428 (La.App. 1st Cir.1991), writ denied, 596 So.2d 196 (La.1992). We find no abuse of discretion in the trial court's reception of this evidence in this case.
W.A.S. also objects to the admission of the blood test because he alleges the proof offered did not meet the requirements of La. R.S. 9:397.2, which provides:
The chain of custody of blood or tissue samples taken under this Part may be established by affidavit if verified documentation of the chain of custody is submitted with the expert's report and if such documentation was made at or near the time of the chain of custody and was made in the course of regularly conducted business activity.
The basis of appellant's argument on this issue is the fact that the affidavit of the lab technician who drew W.A.S.'s blood was executed on January 6, 1992, and not at the time the blood was drawn. We do not believe La.R.S. 9:397.2 requires the affidavit to be executed "at or near the time of the chain of custody," but rather, it is the "documentation of the chain of custody" which the statute requires to be made "at or near the time of the chain of custody." The Roche Biomedical Laboratories chain of custody form entered into evidence with the expert's report bears the signature, dated March 4, 1991, of Karmen B. Poole who packaged the specimens. Ms. Poole's affidavit dated January 6, 1992, is also in evidence attesting that she drew blood from W.A.S., properly packaged the specimen and forwarded it to the testing facility. Hence, we conclude the provisions of La.R.S. 9:397.2 were met.
Appellant's remaining assignment of error alleges plaintiff failed to prove by a preponderance of the evidence W.A.S. is the biological father of the minor child. Upon the conclusion of the trial, the trial judge stated, "I have listened to all of the evidence, I have weighed the evidence, and there is no doubt in the Court's mind that [W.A.S.] is the father of this child." We are unable to say the finding of the trial court is manifestly erroneous. Stobart v. State of Louisiana Through Department of Transportation and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989).
For the reasons assigned herein, the judgment of the trial court is affirmed; all costs of this appeal are to be borne by appellant.
AFFIRMED.
NOTES
[1] As done in State in Interest of Three Minor Children, 572 So.2d 1181 (La.App. 1st Cir.1990), we have recaptioned this matter and omitted the names of the parties from this opinion to maintain the privacy of the minor child involved in these proceedings.
[2] La.R.S. 9:396 was amended by Acts 1992, No. 407, § 1 to allow for the collection of blood and/or tissue samples from the mother, child, and alleged father.